White, C. J.
In the matter of the assignment of judges to hold district courts, under the act of May 10, 1878, entitled “An act to change the common pleas districts of the state,” etc. (75 Ohio L. 139); and the act of May 13, 1878, amending the first-named act. 75 Ohio L. 537.
These acts undertake to reconstruct the common pleas districts of the state. The eight districts existing outside •of Hamilton county are reduced to four; and the subdivisions are, in the main, left as they existed under the former organization.
As organized under these acts, the second district consists of seven subdivisions; the third, of eight subdivisions ; the fourth, of six subdivisions, and the fifth of eight •subdivisions.
Section 2 of the act first named provides that “ in each *432 judicial district three common picas judges shall be designated and assigned to hold the district courts in such district.” . . .
Section 3 is as follows: “ The supreme court, or a majority of the judges thereof, shall designate said three common pleas judges in each district, and by rule of court, or otherwise, arrange for a presiding judge in holding district courts.”
In section 4 it is provided that “ in fixing the terms of courts, in each of said districts, a majority of said designated judges shall fix the times for holding district courts,, and they, with the other common pleas judges, the times for holding the common pleas courts, as now provided by law.”
The act providing for fixing the terms of court, requires the judges, or a majority of them, in each common pleas district, on or before the first day of November in each-year, to issue their written order to the clerk of the court of common pleas of each county in the distr^t, specifying the commencement of the terms of the district court, and of the several terms of the court of common pleas in each of the counties of the district.” S. & S. 600.
It becomes, therefore, of the highest importance to know whether the terms of the courts of common pleas, and of the district court, are to be fixed by the judges of, and with reference to, the districts as constituted by the acts first above named, and the courts held in accordance with these-acts, or whether the terms of the several courts are to be-fixed, and the courts held in the several districts as they existed independent of said acts.
If the acts are constitutional the terms of the courts must be fixed by the judges of the new districts and with reference to such districts; and the several courts must be constituted and held in accordance with the provisions of the acts. But if the acts are unconstitutional, the terms of the courts must be fixed, the courts constituted, and held as they would have been had the acts not been passed.
The first question with which we are met, in entering- *433 upon the duties required of us by the act as amended, is,, whether it is competent-for the general assembly to devolve-upon this court, or the judges thereof, the duty of designating from the judges of the courts of common pleas,, those who are to hold the district courts as prescribed, by the act.
Some members of the court question the authority of the-general assembly to devolve the duty upon us. But, in the-opinion of the-majority, we would not be warranted in refusing to perform the service required of us by the act, if the plan or scheme of reorganization contemplated by the-act could, consistently with the constitution, be carried into-effect.
The object of providing for the organization of the new districts in the mode prescribed by the act, was to secure the permanent holding of the district courts in each district by the three judges of the court of common pleas designated for the purpose. The new districts were formed by the consolidation, in whole or in part, of former-districts, allowing the subdivisions to remain substantially as they were for all the purposes of the court of common pleas. This was, in effect, creating the new districts for the purposes of the district court alone, without reference to the courts of common pleas; and the purpose of consolidating the former districts was to so enlarge them that the holding of the district courts in each might occupy all the-time of the judges assigned to that duty.
In being called upon to set this new organization of the-courts in motion two questions arise:
1. "Whether the act, in so far as it undertakes to reconstruct the common pleas districts of the state in the mode therein provided, is constitutional.
2. Whether the district courts can, consistently with the constitution, be constituted in the districts thus sought to-be created, as provided in the act.
In determining the answers to be given to these questions it is to be observed, in the first place, that our judicial *434 ¡system was established and organized by the constitution itself. The districts and the subdivisions of districts were •formed, and the courts of the several districts fully organized by the constitution, independent of any aid from the ■general assembly.
The plan upon which the common pleas districts and the subdivisions were constituted, and the courts of common pleas organized, is found in section 3 of the judicial article •of the constitution.
The section is as follows:
“ Sec. 3. The state shall be divided into nine common pleas districts, of which the county of Hamilton shall constitute one, of compact territory, and bounded by county lines; and each of said districts, consisting of three or more 'counties, shall be subdivided into three parts, of compact territory, bounded by county lines, and as nearly equal in population as practicable; in each of which one judge of the court of common pleas for said district, and residing therein, shall be elected by the electors of said subdivision. Courts of common pleas shall be held, by one or more of these judges,, in every county in the district, as often as may be provided by law; and more than one court, or sitting thereof, may be held at the same time in each district.”
The mode of constituting the district courts is prescribed by section 5, which is as follows:
“ Sec. 5. District courts shall be composed of the judges -of the court of common pleas of the respective districts, and one of the judges of the supreme court, any three of wriiom shall be a quorum, and shall be held in each county •therein, at least once in each year; but if it shall be found inexpedient to hold such court annually, in each county of any district, the general assembly may, for such district, provide that said court shall hold at least three annual sessions therein, in not less than three places: provided, that -the general assembly may, by law, authorize the judges •of each district to fix the times of holding the courts therein.”
*435 Section 12, article 11, apportions the state for judicial purposes, in accordance with section 3 of the judicial article above quoted.
The county of Hamilton is constituted the first district, which, it is declared, shall not be subdivided. The remaining counties of the state are formed into eight districts, ■each district being composed of three subdivisions; and thus section three, above quoted, as respects the formation ■of the districts and subdivisions, is carried into full effect.
The constitution likewise provides for the first and the ■subsequent election of the judges; and thus by its own provisions completes a permanent judicial system for the state.
The only power conferred upon the general assembly to . ■interfere with the system thus established is found in section 15 of the judicial article. This section is as follows :
“ Sec. 15. The general assembly may increase or diminish the number of the judges of the supreme court, the number of the districts of the court of common pleas, the number of judges in any district, change the districts, or the subdivisions thereof, . . . whenever two-thirds of the members elected to each house shall concur therein; but no such change, addition, or diminution shall vacate, the ■office of any judge.”
It was claimed by the learned counsel who submitted an ■argument to us. in support of the constitutionality of the act, that the power conferred by this section, of the constitution on the general assembly, to increase or diminish the number of districts, authorized the diminution of the number of districts established by the constitution, in the mode provided for in the act, leaving the subdivisions substan- • tially as they were before.
This, it seems to us, is a clear misapprehension of the power. The districts to which the power refers are organized districts. The new districts which, by diminution, are to take the place of the former districts, must be constituted upon the plan laid down by the constitution for the formation of districts. The districts of the state may be *436 made less in number, but tbe principles upon which, they are formed must remain the same. Whether the districts-are increased or diminished in number, they must nevertheless be constituted in accordance with the requirements of section 3 of the judicial article. Each district must be composed of compact territory, and be bounded by county lines ; and each district, “ consisting of three or more counties,” must “ be subdivided into three parts, of compact territory, bounded by county lines, and as nearly equal in population as practicable.” Section 3 furnishes a permanent rule for the organization of districts under the judicial system established by the constitution; and, while full authority is given by section 15 to increase or diminish the number of districts, yet, in the exercise of this authority, the new districts must be organized in accordance with the principles laid down in section 3.
If, on the other hand, section 3 is not to govern in the-organization of new districts, and two or more districts may be consolidated into one, leaving the internal organization by subdivisions to remain as they were before, it follows, upon the same principle, that all the districts of the state may be consolidated without disturbing the existing subdivisions.
The effect of this would be to extend the jurisdiction of each jiidge of the court of common pleas throughout the-state, without regard to the subdivision in which he may have been elected; for the judges of the court of common pleas are judges of their respective districts, and not of the mere subdivisions thereof. The subdivision of the districts is for election purposes merely. Harris v. Gest, 4 Ohio St. 472 ; Railroad Company v. Sloan, 31 Ohio St. 1.
The further effect would be that all the common pleas-judges of the state would, under section 5 of the judicial article already quoted, become members of the district court to be held in each county of the state.
This would be the substantial destruction of the system ordained by the constitution. A principle adopted in the- *437 -reorganization of the districts of the state, which leads to «rich results, can not he reconciled with the constitution.
It may here also be remarked that if the third section is ■the basis, as we think it is, on which all new districts must be formed, it operates as a limitation upon the power of creating new districts, and the observance of its requirements will practically operate as a check against the making of such districts either too large or too small for the public convenience.
Again, authority is not only given to increase or diminish the number of districts, but also to “ change the districts or subdivisions thereof;” and it is said that the power to change must be understood in its generic or unlimited sense, and consequently that power is given to multiply the subdivisions of a district at the discretion of the general .assembly.
The argument is, that as the general assembly may diminish the number of districts, and as they are not limited in the number of subdivisions that may be created in a district, they may consolidate districts and adopt the subdivisions existing at the time of the consolidation.
If the assumption as to the meaning and force of the word “ change,” in the connection in which it is used, is •correct, such result would follow; but it seems clear to us that the assumption is not warranted.
In the first place, it seems quite plain that the power .given to “ change the districts,” taken in the connection in which the terms are used, has reference to altering the territorial limits of the districts; and that the word “ change ” is used in the same sense as applied to the sub•divisions as it is when applied to the districts.
In the second place, the power to “ change the districts or the subdivisions thereof” is limited by the conditions prescribed in section 3 in respect to the mode in which the districts and subdivisions are to be constituted. If the power is not thus limited, there is no restriction against the ■division of counties in changing the districts or subdivisions. Section 3 requires the districts to be formed of com *438 pact territory, and to be bounded by county lines. It also-requires each district to be subdivided into three farts of compact territory, which are also to be bounded by county lines.
The declaration that the districts shall be divided into-three parts of compact territory, is as explicit and imperative as the declaration that the districts and subdivisions: shall be formed of compact territory, and that counties-shall not be divided; and, in exercising the power of changing the districts or the subdivisions, the one requirement of the section can be no more disregarded than the other.
It is also said that the authority to reduce the number of subdivisions of a district below three is implied from the general power given in section 15 to reduce the number of judges in a district.
It is, however, conceded that the power of reducing the-number of judges is not unlimited; and that the power is-subject to the implied limitation that the number in a district can not be reduced below what is required to constitute the district court. But it is said that the judges in any district may be reduced to two, for the reason that two-judge^ of the district and a judge of the supreme court is all that is required to constitute the district court.
That this position is untenable it seems to us is obvious. It is an attempt to overthrow the express requirement of section 3, which declares that each district shall be subdivided into three parts, by an implication sought to be raised, from the general power given in section 15 to increase or diminish the number of judges in a district.
The implication would seem to be that the number of judges in a district can not be reduced below the number of subdivisions, rather than that the general power to diminish the number of judges carried with it by implication the power to diminish the number of subdivisions.
, It is not necessary to the exercise of the power of reducing the number of judges that the number of subdivisions should also be reduced. Under the power given of changing the districts or diminishing their number, or- *439 •where the judges in a district have been increased, ample occasion may arise for the exercise of the power of reducing the number of judges, without affecting the subdivisions.
A further answer to the position is, that section 5, which provides for the organization of the district courts, shows,, by clear implication, that the number of judges in each district was not intended to be less than three. The section declares that the “ district courts shall be composed of the judges of the court of common pleas of the respective districts, and one judge of the supreme court, any three of whom shall be a quorum.
It could not have been intended that the number of judges competent to hold district courts in the several districts might be diminished permanently to the number essential to constitute a mere quorum.
But it appears that the general assembly, commencing as far back as 1862, have repeatedly exercised the power of creating a fourth subdivision in a district. On the faith of such legislation, the subdivisions of districts have been reorganized, and judges have been elected, who have exercised and are still exercising the functions of office under such authority. And it is urged that this constitutes such a practical construction of the constitution in respect to the power in question, and such a general acquiescence, as that the power ought not now to be drawn in question. How this may be in regard to the particular instances, we are not called upon in the matter before us to determine. But such action can not be made the basis or foundation of a new innovation, which, if carried out, we can not but regard as, in its effect, subversive of the judicial system established by the constitution.
In regard to the second question, namely, whether the district courts can be constituted, in the districts sought to be created by the act, as therein provided, little need be added to what has already been said. Eor, if the districts which were sought to be created by the act fail, the mode *440 prescribed for organizing district courts in such districts must, of course, fail.
It is apparent from the provisions of the act, that the object, as already remarked, of organizing the new districts was to secure the permanent holding of the district courts in each district by the judges designated for the purpose. Section 4 provides that the “designated judges shall not be required to hold common pleas courts, and shall continue to act as such district court judges until the expiration of "their several terms for which elected, unless sooner relieved by assignment otherwise by the judges of the supreme •court.” . . . And in section 6 it is provided that ■“the common pleas judges not assigned, as aforesaid to hold district courts, shall be subject to the orders of the judges so assigned, or a majority of them.”
We do not mean to question the authority of the general assembly, by legislation, to require such an apportionment ■of the judicial force of the district as to secure the efficient .administration of justice, in both the courts of common pleas and district courts, throughout the district.
But where, as in the present instance, it undertakes to ■consolidate districts and to provide for the assignment of pai’t of the judges, during their terms of office, to the performance exclusively of district coui't duty, and the x’emainder of the judges to the perfonnaxxce of the duties of the court of common pleas, it assumes an authority which, in our opinion, is cleaily not warranted by the constitution.
We fully assent to the doctrine that a statute which has received the sanction of the general assexnbly should only be held void, as repugnant to the constitution, when the repugnancy is clear, and the provisions of the statute and of the constitution can not be fairly recoxxciled.
But the constitution must be interpreted and effect given to it as the paramount law of the land, equally obligatory upon the legislature as upon other departments of the government and individual citizens, according, to the spirit and intent of its framers, as indicated by its terms. An act *441 violating the true intent and meaning of the instrument, .although it may not be within the letter, is as much within the purview and effect of a prohibition as if within the strict letter; and an act in evasion of the terms of the constitution, as properly interpreted and understood, and frustrating its general and clearly expressed or necessarily implied purpose, is as clearly void as if in express terms forbidden. People ex rel. v. Albertson, 55 N. Y. 55.
Gtlmore, Boynton, and Okey, J.J., concurred. Mc-Ilvaine, J., dissented.